ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 27, 2008

The Honorable Fred Hill
Chair, Committee on Local Government
   Ways and Means
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0631

Re: Implementation of changes to tax proceedings required by recently enacted House Bill 1010, which provides for the consolidation of appraisal districts (RQ-0655-GA)

Dear Representative Hill:

You request our opinion on several questions that relate to the implementation of recently enacted House Bill 1010.[1] By amending provisions in the Texas Tax Code, House Bill 1010 changed the property appraisal system by realigning appraisal district boundaries to county boundaries and eliminated overlapping appraisal territory caused by the decision of a multi-county taxing unit to be served by a single appraisal district.[2] On January 11, 2008, we issued Attorney General Opinion GA-0590, which considered questions with respect to House Bill 1010's impact on the Waller County Appraisal District. *See generally* Tex. Att'y Gen. Op. No. GA-0590 (2008). Attorney General Opinion GA-0590 describes the state of the law before the enactment of House Bill 1010 as well as the statutory changes enacted by the bill, and we incorporate that description into this opinion. *See id.* at 1–3. In light of the changes made by House Bill 1010, you ask about the following scenarios:

> 1) A protest or correction motion relating to 2007 or an earlier year is presently pending before the appraisal review board for appraisal district A. Does the appraisal review board for district A retain jurisdiction after January 1 to hear and determine the protest, and order a change to the relevant appraisal roll for the affected jurisdictions? . . . .

---

[1]*See* Letter from Honorable Fred Hill, Chair, Committee on Local Government Ways and Means, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Dec. 7, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

[2]*See* Act of May 17, 2007, 80th Leg., R.S., ch. 648, 2007 Tex. Gen. Laws 1223, 1223–25 [hereinafter Act of May 17, 2007].

2)   Assuming the answer to question 1) is yes, would the chief appraiser of appraisal district A still be required under Sec. 6.025 to notify the chief appraiser of appraisal district B, and would that chief appraiser be required to enter the reduced value on the appraisal roll?

. . . .

3)   In the event the chief appraiser in appraisal district A discovers property that was not taxed in 2007 or in prior years in territory that is transferred to appraisal district B under HB 1010, does the chief appraiser of appraisal district A retain the authority to supplement the property onto the appropriate appraisal rolls under Sec. 25.21, Tax Code? Under the Tax Code, Sec. 32.01, a lien attaches to all property on January 1 to secure the payment of taxes later imposed for the year. It would seem that, as the lien is a liability accrued under the prior statute, [t]he Code Construction Act would govern.

4) . Not all of the possible deadlines for filing protests or correction motions related to years prior to 2008 have elapsed. If a property owner files a protest or correction motion related to a year prior to 2008, and the property is located in territory transferred to appraisal district B, which appraisal review board has jurisdiction to hear the protest or correction[?] Again, it would seem that the appraisal review board for appraisal district A retains that authority.

Request Letter, *supra* note 1, at 1–2.

Generally an appraisal district's boundaries are the same as the boundaries of the county—its "home" county—for which the appraisal district is established. *See* TEX. TAX CODE ANN. § 6.02(a) (Vernon 2008); *see also id.* § 6.01(a)–(b) (establishing a tax appraisal district in each county). Under the former version of section 6.02 of the Tax Code, a taxing unit with boundaries in two or more counties could "choose to participate in only one of the appraisal districts." Tex. Att'y Gen. Op. No. GA-0590 (2008) at 2 (quoting former section 6.02(b) of the Tax Code). When such a multi-county taxing unit made that choice "the boundaries of the appraisal district serving the taxing unit extended outside the district's home county to the extent of the taxing unit's boundaries." *Id.* "This area of extension was referred to as 'overlapping territory.'" *Id.*

In Attorney General Opinion GA-0590, the Waller County Appraisal District ("WCAD") was concerned about its responsibility "after January 1, 2008,[3] for litigation filed against the district involving properties outside the boundaries of Waller County." *Id.* at 1 (footnote added). The authority for the WCAD to defend the litigation under chapter 42, Tax Code, for property located in the overlapping territory was contained in former section 6.02(b). *Id.* House Bill 1010 amended

---

[3]House Bill 1010 is generally effective on January 1, 2008. *See* Act of May 17, 2007, § 7(a), at 1225, *supra* note 2. Section 6 of the Act was effective September 1, 2007. *See id.* § 7(b).

section 6.02(a) and (b) to eliminate the authority of a multi-county taxing unit to participate in only one appraisal district. *See* Act of May 17, 2007, § 1, at 1223, *supra* note 2. The fundamental question then was whether the right to defend the litigation regarding property in the overlapping territory under former law still existed after the amendment of section 6.02. *See* Tex. Att'y Gen. Op. No. GA-0590 (2008) at 1, 4.

Our initial determination that House Bill 1010 was prospective did not resolve the question. *See id.* Instead, the question in GA-0590 required an examination of whether provisions of the former law were "saved." *See id.* And, House Bill 1010 did not itself contain a savings clause. *See* Act of May 17, 2007, at 1223–25, *supra* note 2. Noting the principle that "generally, when a statute is repealed or amended without a savings clause, the repeal or amendment abrogates any cause of action based upon the former law, and pending suits cease," we nonetheless determined in GA-0590 that the WCAD retained authority to defend the pending litigation because of the Code Construction Act's general savings clause. *See* Tex. Att'y Gen. Op. No. GA-0590 (2008) at 4, 8; TEX. GOV'T CODE ANN. § 311.031 (Vernon 2005); *see also Quick v. City of Austin*, 7 S.W.3d 109, 125, 128–29 (Tex. 1998) (construing section 311.031).

The general savings clause, found in section 311.031 of the Government Code, provides in relevant part that:

> (a)   ... the reenactment, revision, amendment, or repeal of a statute does not affect:
>
> (1)   the prior operation of the statute or any prior action taken under it;
>
> (2)   any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;
>
> ... ; or
>
> (4)   any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

TEX. GOV'T CODE ANN. § 311.031(a) (Vernon 2005). The Texas Supreme Court in *Quick* recognized that the "adoption of the general savings clause . . . indicates a general legislative policy that the repeal of any statute shall not affect the prior operation of that statute nor extinguish any liability incurred or affect any right accrued or claim arising before the repeal takes effect." *Quick*, 7 S.W.3d at 125, 129–30. Acting on that legislative policy, the Texas Supreme Court decided in *Quick* to "presume that the general savings clause applies unless a contrary legislative intent is shown by clear expression or necessary implication." *Id.* at 130. Based on *Quick's* assessment of the general savings clause and because we found no legislative intent to the contrary, we reasoned

that an "[a]ction taken before [House Bill 1010] by a taxing unit under section 6.02(b) to have an appraisal district extend its boundaries and provide its services outside its home county constitutes an action taken under the prior law" preserved by the general savings clause. Tex. Att'y Gen. Op. No. GA-0590 (2008) at 5–6. And that reasoning, combined with section 311.031(a)(4)'s dictate that the amendment or repeal of a statute does not affect any proceeding or remedy concerning any privilege, obligation, or liability, resulted in our conclusion in GA-0590 that an "appraisal district has continuing authority to defend itself in litigation brought under chapter 42 and related to territory outside its home county where a multi-county taxing unit chose to participate in the district in compliance with section 6.02 as that section existed prior to [House Bill 1010]." *Id.* at 6.

Attorney General Opinion GA-0590's underlying determination was that the taxing unit's decision to participate in only one appraisal district constitutes "prior action" and that the attendant duties and obligations of the district with respect to that decision under section 6.02(b) are saved by the dictates of section 311.031(a)(2) and (4) of the Government Code. *See id.* at 5–6. With respect to your first question, the attendant duties and obligations of an appraisal district include hearing and acting on taxpayer protests authorized by chapter 41, Tax Code, and hearing and acting on taxpayer corrective motions authorized by section 25.25, Tax Code. *See* TEX. TAX CODE ANN. §§ 25.25 (Vernon 2008) (concerning corrections to the appraisal roll), 41.01 (establishing duties of appraisal review board, including duty to determine protests and challenges initiated by property owners and taxing units and acting on motion to correct appraisal roll), 41.41 (authorizing taxpayer protest). The appraisal district's duties and obligations in the overlapping territory stem from the same "prior action" of the taxing entity—its decision to participate in only one appraisal district. Thus, as the general savings clause saved the authority of an appraisal district to continue to defend pending litigation under chapter 42 based on that prior action, so too does the general savings clause save the authority of an appraisal district regarding pending motions and protests under chapter 41 and section 25.25. *See TSP Dev., Ltd. v. Tex. Natural Res. Conservation Comm'n*, 16 S.W.3d 148, 152–153 (Tex. App.—Austin 2000, no pet.) (applying *Quick's* interpretation of the general savings clause in the context of an administrative rule). We therefore conclude that an appraisal district retains authority over property in the overlapping territory as to hearing and determining pending protests and corrective motions that pertain to the 2007, or prior, tax year.

Your second question, contingent on an affirmative answer to your first, concerns repealed section 6.025 of the Tax Code. *See* Request Letter, *supra* note 1, at 2; *see also* Act of May 17, 2007, § 5(3), at 1224 (repealing section 6.025), § 7(a), at 1223–25 (providing for effective date of January 1, 2008), *supra* note 2. Former section 6.025 provided appraisal procedures for property that was located in overlapping territory.[4] That statute required the chief appraisers of each appraisal district to "coordinate their appraisal activities so as to encourage and facilitate the appraisal of the same property . . . at the same value."[5] In the event the chief appraisers did not agree on the appraised or market value of a parcel in the overlapping territory, section 6.025(d) required that the "lowest appraised or market value . . . as determined by any of the chief appraisers" be entered on the

---

[4]*See* Act of May 12, 1995, 74th Leg., R.S., ch. 186, 1995 Tex. Gen. Laws 1914, 1914–15 (amended in 1997, 1999, 2003), *repealed by* Act of May 17, 2007, § 5(3), at 1224, *supra* note 2.

[5]*Id.* § 1, sec. 6.025(c), at 1914.

appraisal roll of each appraisal district.[6] You inquire whether these procedures are still required of the chief appraisers. *See* Request Letter, *supra* note 1, at 2.

House Bill 1010 is silent about whether section 6.025 remains effective for appraisal of property in overlapping territory for tax years prior to the 2008 tax year. *See* Act of May 17, 2007, §§ 1–7, at 1223–25, *supra* note 2. Again, we look to the Code Construction Act's general savings clause. Section 311.031 plainly provides that the "repeal of a statute does not affect . . . the prior operation of the statute" nor any "right, privilege, obligation, or liability previously accorded . . . under it." TEX. GOV'T CODE ANN. § 311.031(a)(1)–(2) (Vernon 2005). With respect to pre-2008 tax appraisals, cooperation between the chief appraisers and, in particular, listing the lowest appraised or market value, are rights or privileges accorded to the taxpayer. Such rights or privileges impose a concomitant duty or obligation on the appraisal district under the former statutory scheme. With respect to a tax year that is prior to the 2008 tax year, the concomitant obligation is one previously "accrued, accorded, or incurred" and thus saved by the general savings clause. *Id.* § 311.031(a)(2). Accordingly, we conclude that cooperation between chief appraisers regarding property located in the overlapping territory of appraisal districts, as well as the listing on the appraisal rolls of the lowest appraised or market value, is still required.

Your remaining questions relate to actions regarding the 2007, or prior, tax year that are not currently pending. *See* Request Letter, *supra* note 1, at 2. You describe property located in overlapping territory and subject to appraisal by one appraisal district by virtue of extended boundaries under former section 6.02(b). However, with the enactment of House Bill 1010, it is now served by another appraisal district—the one in the county in which the property is located. *See id.* (asking about property in "territory that is transferred [from appraisal district A] to appraisal district B under HB 1010"). *Id.* Specifically, your third question concerns the authority of the appraisal district which "lost" authority over property in the overlapping territory to supplement its appraisal roll to include previously omitted property for a tax year prior to the 2008 tax year. *See id.*; *see also* TEX. TAX CODE ANN. § 25.21 (Vernon 2008) (authorizing chief appraiser discovering property omitted from an appraisal roll for five preceding years to "appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records"). With respect to this transferred property, you next ask whether a protest or corrective motion relating to a tax year prior to the 2008 tax year that is filed within the applicable deadline, but after January 1, 2008, is heard by the appraisal review board of the appraisal district from which the property was transferred or the appraisal district for the county in which the property is located. *See* Request Letter, *supra* note 1, at 2.

Section 25.21 authorizes an appraisal district, within a specified time frame, to supplement its appraisal roll to include omitted property. *See* TEX. TAX CODE ANN. § 25.21 (Vernon 2008). Chapter 41 authorizes an appraisal district to hear and determine timely-filed taxpayer protests. *See id.* ch. 41. Actions under section 25.21 and chapter 41 pertain to and flow from the appraisal of the property as of January 1 of each tax year as well as the January 1 attachment of the tax lien to secure the taxes for that tax year. *See id.* §§ 23.01(a) (appraisal), 32.01 (tax lien). As discussed above, the general savings clause preserves rights, privileges, obligations, and liabilities previously acquired

---

[6]*See* Act of June 1, 2003, 78th Leg., R.S., ch. 1041, § 1, sec. 6.025(d), 2003 Tex. Gen. Laws 2997, 2997.

or accrued as well as proceedings and remedies to preserve the same. *See* TEX. GOV'T CODE ANN. § 311.031(a)(2), (4) (Vernon 2005). Accordingly, when corrective motions and taxpayer protests are filed within the applicable deadlines and concern the appraisal of property for a tax year prior to the 2008 tax year, the appraisal district operating in the overlapping territory under former section 6.02(b) retains authority to hear and determine those motions and actions.

## S U M M A R Y

Despite the enactment of House Bill 1010 by the Eightieth Legislature, an appraisal district operating in overlapping territory by operation of section 6.02(b) of the Tax Code retains authority to hear and determine pending corrective motions and taxpayer protests concerning property in that territory that relate to the 2007, or prior, tax year. With respect to appraisal districts with overlapping territory in the tax years prior to the 2008 tax year, the prior operation of former section 6.025 is preserved by the Code Construction Act's general savings clause.

An appraisal district operating in overlapping territory under former section 6.02(b) retains authority to hear and determine those timely-filed corrective motions and taxpayer protests that concern the appraisal of property for a tax year prior to the 2008 tax year.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee